## McKINNEY et v McKINNEY et

Ohio ·Probate Court, Lake Co

Squire, Sanders & Dempsey, Cleveland, for plaintiff trustees.

Thompson, Hine & Flory, Cleveland, and Duncan, ·Leckie, McCreary, Schlitz & Hinslea, Cleveland, for various defendants.

### OPINION

By SWEET, J.

In this action the plaintiff trustees seek construction of the will of Price McKinney. Price McKinney, Sr., died April 13, 1926, a resident of the village of Wickliffe in Lake County, leaving surviving him Lucy D. McKinney and three children, Rigan McKinney, Elizabeth McKinney McIntosh and Price McKinney, Jr. His estate, consisting for the most part of personal property, was valued at approximately $12,000,000. His will disposing of said estate as probated April 22, 1926, was executed by him August 13, 1920. At that time he was 58 years of age, his wife was 34 years of age and the children were 12, 11 and 8 respectively. Testator's will was drawn by Andrew Squire, an attorney-at-law of Cleveland.

The provisions of the will in question in this case are the second and third items which read as follows:

"Item II. All of the rest of my estate, of every kind and description, I give, devise

and bequeath to my wife, Lucy D. McKinney, Harry Coulby and Andrew Squire, as trustees, to be held in trust by them and the survivors of them until my youngest child shall have attained the age of twenty-five (25) years, and then distributed, one third (1/3) to my wife, Lucy D. McKinney, and the balance equally between the children living at the time of my decease; or, in the event of the death of any child, leaving issue, then such issue shall receive the share that would have been received by such deceased child if living at the time of the distribution.

"Item III. From the net income received by my said trustees, I direct one-third (1/3) thereof shall be paid to my wife as received; the remaining two-thirds (2/3) shall be held in trust for the benefit of my children during the life of the trust, except that my trustees shall expend from each child's share such an amount as may be necessary for the proper care and education of each of my said children until each child shall attain the age of twenty-one (21) years after which time the trustees shall be authorized to turn over to such child such portion or all of the income belonging to such child, as the trustees shall deem for the interest of such child, until the youngest child shall have attained the age of twenty-five (25) years, when everything remaining in the possession or under the control of the trustees shall be distributed, so that each child shall receive his or her proper share. All income received for the children and not expended for them shall be invested and reinvested in such manner as the trustees shall deem for the best interests of the children."

Item One of said will provided for certain pecuniary legacies which are not questioned.

Price McKinney, Jr., died October 16, 1935, unmarried and without issue at the age of twenty-four years. His mother and brother and sister survive him.

Interpretation of the will of Price McKinney, Sr. is sought to determine what disposition is to be made of the share of Price McKinney, Jr., to-wit, whether it goes to his estate, to the surviving children of Price McKinney, Sr. or to the heirs of Price McKinney, Sr. as a lapsed legacy. The administrator of Price McKinney, Jr. claims that his decedent had a vested interest in his share of the trust estate which became absolute upon his death without issue. The brother and sister claim that testator's intention as gathered from the entire will was to create an estate contingent upon his reaching the age of twenty-five (25) years; that the gift is one to the children as a class, the members of which are to be determined at the time of distribution; that the surviving children therefore take the share of Price, Jr. The principal issue is whether the gift was vested or contingent.

Upon examining the provisions of the will to determine testator's intention we find several expressions and provisions which when taken together convince the court that testator intended to create vested interests in his children, enjoyment of principal being withheld until the time specified for distribution.

It will be noted, first, that testator disposes of the entire residue of his estate under the provisions in question and specifically provides that the share passing to his children shall go to the children living at the time of his decease. Testator has thus definitely fixed the members of the class and the time at which they are to be ascertained. In such case if we were to construe the bequest as contingent the death of any of the children without issue prior to the vesting of his interest, would result in intestacy. The law presumes that testator did not intend to die intestate as to any part of his estate and in case of ambiguity prefers a construction vesting estates at the earliest time consistent with the intention of testator.

Page on Wills, Second Edition, paragraph 1121:

"In legacies, as in devises, wherever testator's language is ambiguous, or obscure, or doubtful, a construction is preferred which will make a legacy vested rather than contingent, or, if contingent, will make it vested as soon as possible."

Page on Wills, Second Edition, paragraph 1110:

"As between vested and contingent interests, vested interests are preferred in construction, especially in a gift to lineal descendants of testator, and in a gift of the residue, since, otherwise, intestacy may result. Any doubt will be resolved in favor of vesting, and an interest will be held to be contingent only if testator's intention is clearly shown * * *."

Also Thompson on Wills, Second Edition, paragraph 362; **41 Ohio Jur. 727.**

Testator makes a gift of the residue to trustees "to be held in trust by them and the survivors of them **until** my youngest child shall have attained the age of twenty-five. (25) years, and then **distributed,** one-third (1/3) to my wife, Lucy D. McKinney, and the balance equally between the children living at the time of my decease." In this provision testator has used only words indicating futurity and not words of condition or contingency. If he had desired to make the bequest contingent upon a child reaching the age of twenty-five, his eminent counsel and himself could easily have chosen appropriate words to have accomplished such purpose. That they did not do so is significant. It is also significant that testator does not provide that he gives the property to the children at such future time but merely uses the words "and then distributed," conveying the idea that the property in the hands of the trustees belongs at all times to his children and that merely the control, custody and management thereof is vested in the trustees until the time fixed by him at which he considered they would be capable of controlling and managing the property themselves. In other words, testator himself treats the gift to the trustees as a gift to the wife and children. Several cases where gifts were similarly made to trustees "until" the legatee attains a certain age, and "then" to such legatee have been collected together in the note to Shackley v Homer, L.R.A. 1915 C at page 1143, in which the courts have almost uniformly held that testator in the use of such words intended merely to withhold possession of an estate which vested in interest at the time of his decease.

One of the most significant indications of testator's intention, according to the authorities, is the provision for the income on the share of each child in the residue to be paid out for his benefit or accumulated for him to be paid with his share of the principal at the time of distribution.

Note, L.R.A. 1918E, page 1114.

"Next to the existence of words of present gift, apart from the direction to pay, convey, or divide at a future time, the strongest circumstance going to show that the gift, to the substance of which futurity is apparently annexed, is not contingent upon surviving the time of payment, is a gift of the intermediate use to or for the benefit of the legatee."

Cropley v Cooper, 19 Wall. (U. S.) 167, 174.

"Where a bequest is given by a direction to pay when the legatee attains to a certain age, and the interest of the fund is given to him in the meantime, this shows that a present gift was intended, and the legacy vests in interest at the death of the testator."

Note L.R.A. 1915C, page 1027.

"If a legacy is given to a class of persons, to be paid to them or to be divided between them when one shall attain a certain age, or at any other definite future time, they take a vested interest immediately after the testator's death, the presumption being that he intended to annex the time to the payment and distribution, and not to the gift; and this presumption is strengthened if he directs the intermediate use of profits to be applied for their maintenance."

Note to Shackley v Homer, L.R.A. 1915C, at page 1036:

"Perhaps the strongest circumstance going to show that a gift to the substance of which futurity is apparently annexed is not contingent upon the attainment of the specified age is a gift of the intermediate use to or for the benefit of the legatee. Although in one case the rule that a gift of the intermediate income has the effect to vest the legacy is spoken of as an absolute one, it is not so in fact, the effect of the gift of income being merely to create a counter-presumption in favor of vesting, which will ordinarily, though not invariably, outweigh the implication of contingency arising from the form in which the gift is expressed * * *."

(See cases cited thereunder. Also see annotations in L.R.A. 1918E, paragraph B at page 1114 and cases cited thereunder).

Throughout his will testator contemplates, and proper handling by the trustees would necessitate, a present division of the property coming into their hands into shares. The income available for each child for his support before he is twenty-one as well as that to be paid within the discretion of the trustees after he is twenty-one is to be debited against each particular share "so that each child shall receive his or her proper share." These shares are referred to as belonging to the children from the time of his death until the time fixed for them to come into possession thereof, again indicating testator's intention and understanding that he was making a present gift.

L.R.A. 1915C, paragraph j, page 1057:

"The severance of the subject-matter of the legacy from the corpus of the estate, as by a direction that it be set apart by the executors, or given to trustees, for the purpose of paying the legacy, is considered as a circumstance indicative of an intention that the gift shall vest in interest immediately."

Paxson (Pa.) 88 Atl. 673:

"Further, it is to be observed that the reference in the clause providing against the death of either of the grandchildren in his or her minority is to "the shares of the one so dying." The significance of this expression is obvious. In referring to it as it occurred in a will under consideration in Smith's Estate, 226 Pa. 304, 75 Atl. 425, our Brother Potter there remarks: "He (the testator) refers to the shares of those who were minors at the time of his death, and directs that such shares were to continue to accumulate until the minors respectively became twenty-one years old, when they were to receive the same. Unless the minors had a vested interest, they could own no shares."

L.R.A. 1918E, paragraph d, page 1126:

"The severance of the subject-matter of the legacy from the corpus of the estate, as by a direction that it be set apart by the executors or given to trustees for the purpose of paying the legacy, is considered as a circumstance indicative of an intention that the gift shall vest in interest immediately. For instances in which it has been so considered, see cases cited in footnote. It is not, however, an absolute indication, but is merely one element to be taken into consideration in a doubtful case.

"It has been made a question in some cases, whether the testamentary directions therein involved amounted to a severance. It has been held that a direction to executors, to invest or otherwise to set apart a fund for the payment of legacies at a future time, or a gift to trustees for the purpose of paying such legacies, without provision for its return to the estate, constitutes a severance. But a direction to executors to pay out a sum of money forming the subject of a postponed gift is not a severance of a gift from the rest of the estate, as in the case of a bequest to trustees; nor is there a severance, where the trust or direction to invest is not for the benefit of the particular legatees, but for the purpose of the will generally; or the subject of the gift is to be held on trust for another purpose only."

(See cases cited thereunder).

It is also significant that testator used the same words of gift and directions for distribution of the share of his wife that he used in relation to the children except that she was entitled to the entire income from her share. It could hardly be contended that the gift to her was intended to be contingent in view of the language used and the fact that he made no attempt to dispose of her share by substitution of a beneficiary in case of her death. The use of the same language in relation to the children indicates his intention to give a vested interest to the children.

Counsel for the surviving children of Price McKinney, Sr. have cited and relied upon the so-called "divide and pay-over rule" stated as follows in Page on Wills, Second Edition, §1126:

"Where a legacy is not given in specific language, but is only implied from the direction to pay the legacy to the legatees at some time subsequent to the death of testator, it is a prima facie rule of construction that such a legacy does not vest at the death of testator, but is contingent until the time fixed for its payment. A common type of such a contingent legacy is one given by a direction to divide property among certain legatees, either named or described, as by being members of a class. * * *"

In the same paragraph we also find the following language which is supported by the authorities as a limitation or definition of the so-called rule:

"This rule, however, while a prima facie rule of construction, is subordinate to the primary rule that the intention of testator must be collected from the whole will, and any form of language in the will which clearly shows that testator intends the legacies to vest before the time of payment must be given full effect by the courts."

In view of the many expressions of intention above referred to which indicate the gift of a vested interest, coupled with the usual presumption in favor of vesting of estates, we do not consider any inference under the so-called "divide and pay-over rule" sufficient in this case to be controlling. It is furthermore our opinion that

this rule does not apply in the instant case because there is a gift by testator separate and apart from the direction to distribute the property. It is our opinion that the present gift to the trustees in the absence of express language to the contrary is equivalent to a present and direct gift to the wife and children to whom it is their duty to transfer the property at the time specified.

L.R.A. 1915C, page 1059, note k:

"The fact that a legacy is given through the intervention of a trustee, who is directed to pay over and deliver the property held by him in trust upon the beneficiary's attaining a certain age, such property from and after that time to belong to the said beneficiary, is not to be construed as indicating an intention to postpone the vesting of the legacy, but rather as declaring an intention that when the beneficiary shall attain the given age the property shall, from and after that time belong to him and his heirs and assigns discharged from the trust. * * *"

L.R.A. 1918E, paragraph a, page 1114:

"Inasmuch as the presence of an antecedent gift, apart from the direction to pay, in the case of legacies, or the direction to convey or divide in the case of realty, is conclusive of the question of vesting, many of the decisions turn on the existence of such a gift. * * *

"It is sufficient that the antecedent gift is to trustees to hold for the benefit of the legatee or devisee till the time of payment or conveyance."

In support of their claim for application of the rule and in favor of contingency, counsel for the surviving children have relied upon several Ohio cases, principally the following: Sinton v Boyd, 19 Oh St 30; Richey v Johnson, 30 Oh St 288; Hamilton v Rodgers, 38 Oh St 242; Weston v Weston, 38 Oh St 473; Barr v Denney, 79 Oh St 358; Biles v Webb, 118 Oh St 346, Affirming Webb v Biles, 27 Oh Ap 197, (5 Abs 607); Baldwin v Humphrey, 4 O.C.C. 57, affirmed without opinion, 21 Weekly L. B. 399; Knisely v Young, 15 O.C.C. (N.S.) 49; Burdsall v Burdsall, 15 O.C.C. (N.S.) 91, affirmed without opinion 90 Oh St 445; Lisle v Miller, 21 O.C.C. (N.S.) 317; Kline v Marsh, 12 O.C.C. 645; Kecheley v Kecheley, 38 Oh Ap 61, (7 Abs 376); Dean v Nichols, 11 O. D.R. 215; affirmed 6 O.C.C. 587, affirmed without opinion, 54 Oh St 628; and Westwater v Guitner, 18 O.N.P. (N.S.) 209. The

court has carefully read the cases cited and is of the opinion that they are clearly distinguishable from the instant case upon differences between the provisions of the wills under consideration.

It will be noted that in the case of Barr v Denney, 79 Oh St 358, the will provided as follows: "After the death of my wife I desire that the whole of my property, both real and personal, be sold by my executor and after expenses are paid to distribute equally to my legal heirs." The court expressly calls attention to the fact that the fund to be divided cannot be created nor the extent of the interest in it be determined until the life estate has terminated, the property has been converted and the expenses paid. The court also points out that the payment was not to specified persons nor a definite class and that there was no distinct gift other than the direction to distribute.

Again in Baldwin v Humphrey, 4 O.C.C. 57, the will provided: "After the death of my said son, Lewis, then all my property then remaining shall be paid over * * *," to his grandchildren.

In Biles v Webb, 118 Oh St 346, the will provided that "when all claims against the said real estate are paid, * * *" the trustees should convert all property into money, pay certain legacies "and to pay the remainder" to his children. In this case it will be noted that the fund for division was to be created in the future and other payments were to come out first so that the amount of the gift to his children was indefinite.

In the case of Hamilton v Rodgers, 38 Oh St 242, the will provided as follows: "Upon the complete determination of the particular estate herein created and upon the final cessation of all the aforementioned annuities I direct and require my said trustees to make a final distribution of my estate then remaining, as follows: * * *."

In the case of Richey v Johnson, 30 Oh St 288, testator provided: "I devise my executors or the survivors of them, after the decease of my said wife, shall sell said last mentioned farm, either at public or private sale, and that the proceeds thereof be divided equally between my brothers and sisters and their heirs—the children of any that may be dead to have the shares of their deceased parents."

It will be noted that in all of these cases the will contained not only words of futur-

ity but also express provisions denoting contingency or that the testator expressly stated that he gave the property at the time of happening of a future event, or the beneficiaries or estate given were not presently definable and in none of these cases was there an antecedent gift to or for the use of the same persons who were to receive the principal gift.

Counsel also relied upon the substitutional gift for the issue of a deceased child as indicating an intention to create a contingent interest. They argue that this provision together with the form of the gift, shows a controlling purpose of testator to keep his property in the hands of his direct descendants and to prevent its passing from his estate to any person other than his children or their issue; that if testator had thought of the children's interests as vested he would naturally have provided for the event of death without issue and would have thus prevented possibility of a widow or widower of a son or daughter and creditors of an improvident child from reaching the estate. The answer to this argument is that testator did not see fit to make such provision and it is inconceivable that either testator or his counsel would have left out express words of contingency or would have left out express provisions for disposal of the share of any who died without issue if testator had intended to give anything other than a vested estate. The inference from the provision for substitution of issue is equivocal at best and is not considered sufficient to overcome other expressions of intention found in this will.

Note to Shackley v Homer, L.R.A. 1915C, page 1062:

"The existence in a will of a provision substituting the issue of any legatee who may die before division cannot be said to have any definite bearing upon the question of vesting.

"It has been argued on the one hand that such a provision indicates that the testator did not contemplate a vesting before the time of division, as otherwise the issue would take away, by inheritance from their parent; on the other, that a substitutional clause implies the divesting of an already vested interest. The contradictory character of the decisions construing wills containing such a provision makes the statement of any general rule impossible."

Although such a provision was considered in the case of **Richey v Johnson, 30 Oh St**

288, and in **Biles v Webb, 118 Oh St 346,** as indicating contingency, in view of the express provision of the McKinney will that the children living at the time of his decease should take and the other provisions indicating a vested estate heretofore mentioned, we are inclined to consider the provision for substitution of issue as creating an executory devise or bequest for the issue, if any, and a defeasible vested estate in each of the children which is not divested by death without issue.

Page on Wills, Second Edition, paragraph 1116:

"Vested defeasible remainders are often created by a gift to A but providing that if he should die before a certain time leaving issue, his interest shall pass to such issue. Such a devise is not defeated by the death of the devisee without issue."

**McCarthy v Hansel, 4 Oh Ap 425; Hudson v Kellerman, 12 Oh Ap 424; Miller v Berk, 14 Abs 23; Burkhardt's Executrix v Decker, 8 N.P. (N.S.) 526; Campbell v McCue, 21 O.C.C. (N.S.) 67; Moore v Deckebach, 46 Oh Ap 381 (14 Abs 677).**

Although no two wills are alike and cases are of value only as to particular provisions, and not as to the general intention of testator, we find that many of the provisions considered in this case appear to have been combined in the following cases cited in the Notes to Shackley v Homer, L.R.A. 1915C, and in such combination were construed to create vested estates; Leeming v Sherratt, 2 Hare 14 found at page 1148; McArthur v Scott, 113 U. S. 340 found at page 1150; Plaenker v Smith, 95 Md., page 389 found at page 1151.

The court also finds many Ohio cases not cited above which support some of the reasons given for the conclusion that the interest of Price McKinney, Jr. was vested at the death of his father. None of them are directly in point and neither time nor space has permitted citations at length from them. Among those considered as indicating that the law of Ohio is in harmony with the conclusions reached are the following:

**Linton v Laycock, 33 Oh St 128; Godfrey v Epple, 100 Oh St at 452; Weng v Weng, 27 N.P. (N.S.) 403; Ohio National Bank v Harris, 126 Oh St 360; Trust Company v Thrall, 5 Ohio Opinions, 462; Provident Savings Bank & Trust Co., Trustee v Anita Volhard, 54 Oh Ap 527, (23 Abs 269) 8 Ohio Opinions 56.**

The last case referred to was decided by

the Common Pleas Court of Hamilton County. The Court of Appeals' opinion is cited at length in the brief of the tax commission as amicus curiae in this case. No opinion was rendered by the Supreme Court on motion to certify which was overruled April 1, 1936. A short memorandum of the case is found in Gongwer State Reports of Supreme Court cases, Report No. 4321 under date of March 6, 1936, which adequately summarizes the issue. From this report it appears that:

"By Item 5, the testator bequeathed in trust for said son Walter W., 60% of the residue of his estate 'to be held in trust by it for my said son. until he becomes 40 years of age, when said * * * trust company shall turn over to him the total 60% so held in trust for him. * * *'."

"In Item 2 the testator referred to the adoption of Annie Hofman and stated that said adoption was declared null and void by her parents, and then gave her $15,000 in full of all claims she might have on account of said adoption."

"Item 6 provided that in case of the son's death before death of the testator, said trust should not take effect and said shares mentioned in Items 4 and 5 should go to Annie Hofman, and by Item 7 it was provided that in case of the son's death before death of testator, his widow, if still a widow at testator's death, should receive $10,000.

"The trust company, as trustee, sought construction of the will, the son having survived the testator, but having died before arriving at the age of 40 years.

"Common Pleas Court. Held that the trust fund was vested and passed to the estate of Walter W. Volhard, upon his death at the age of 31 years.

"Court of Appeals. (Matthews, Ross and Hamilton, JJ.) On appeal. Similar judgment rendered. The court held there is nothing in the will indicating an intention to make Annie Hofman an executory legatee of this trust fund in the event of the death of the son after the death of the testator. That the question then must be considered as to whether the son's estate in the corpus vested upon the death of the testator or was postponed until he arrived at the age of 40 years. And seeking the meaning of the testator as expressed in Item 5, without being influenced by any rules of construction, it seems clear that the only thing withheld from Walter W. Volhard by its
. . .

terms was the control of the property until he reached the age of forty years; until then he had every beneficial interest, and upon reaching that age, that which was withheld the control—was to be surrendered to him; that there seems to be nothing in the language indicating that anything other than the management was to be postponed.

"And the court applying the principles announced in Linton v Laycock, 33 Oh St 128, held that Walter W. Volhard was bequeathed a vested estate by Item 5, subject to no condition, and that upon his death after the testator's death and before reaching the age of 40 years, it passed to his personal representative if he died intestate, and if he died testate, to the beneficiaries named therein." (Emphasis ours).

The interest of Price McKinney, Jr., being vested, passes to his administrator. In view of the fact that the youngest living child has reached the age of discretion specified by testator for his children to receive the possession of their interests, the purpose of the trust has been accomplished and the property may be distributed and the trust terminated. Decree may be entered accordingly.

### Journal Entry.

Thompson, Hine & Flory, Cleveland, for Rigan McKinney and Elizabeth McKinney McIntosh.

Squire, Sanders & Dempsey, Cleveland, for trustees, and Tracy H. Duncan, administrator.

By CARTER, PJ.

This cause came on to be heard on August 27, 1936, on the appeal of Rigan McKinney and Elizabeth McKinney McIntosh, and on the appeal of Lucy D. McKinney, Donald B. Gilles and Edward G. Resch as trustees under the last will and testament of Price McKinney (Senior), deceased, on questions of law and fact, from the order, decree and declaratory judgment entered by the Probate Court of Lake County, and upon the petition of Lucy D. McKinney, Donald B. Gilles and James E. Ferris, trustees under the last will and testament of Price McKinney (Senior), deceased, as plaintiffs, and the separate answers thereto of said Rigan McKinney, Elizabeth McKinney McIntosh, and Tracy H. Duncan, as administrator of the estate of Price McKinney, Jr., deceased, as defendants, filed in said Probate Court, and upon the stipu-

lation of facts by said defendants and the record ordered and taken at the hearing in said Probate Court; defendant Lucy D. McKinney being in default of answer although duly served with process, and Edward G. Resch having become successor to James E. Ferris as trustee under said last will and testament of Price McKinney (Senior), deceased, and having been substituted in the Probate Court for James E. Ferris as plaintiff in the proceeding.

The court having considered said pleadings, stipulation and record, and the arguments and briefs of counsel, finds in favor of the respective appellees for the reasons stated in the opinion of said Probate Court, save and except as to the prayer for instructions and declaratory judgment determining the time when the corpus of the estate is or was distributable, as to which no finding is made and the petition is dismissed.

The court accordingly construes the said last will and testament of Price McKinney (Senior), deceased, and gives direction to the trustees under said will, as follows: That the interest of Price McKinney, Jr., in the corpus of the trust estate held by said trustees was vested in him at the death of the testator Price McKinney (Senior), and is distributable to Tracy H. Duncan as administrator of his estate; to which Rigan McKinney and Elizabeth McKinney McIntosh except.

It is accordingly hereby **ordered, adjudged** and **decreed** that distribution of the corpus of the trust estate shall be forthwith made, and that such distribution of the interest of Price McKinney, Jr., consisting of two-ninths (2/9) thereof, shall be made to Tracy H. Duncan as administrator of his estate, to which Rigan McKinney and Elizabeth McKinney McIntosh except.