## Thompson Estate

*Joseph S. D. Christof*, for life beneficiary.

*H. Carl Brandt*, for Commonwealth.

BOYLE, P. J., November 4, 1953.—This case involves an appeal by a life tenant from a transfer inheritance tax appraisement and assessment. The will of decedent creates life estates as well as remainders. The pleadings raise the question whether the statutory requirement of a separate appraisement and assessment of the life estates is rendered unnecessary by the language of the fifth paragraph of the will which is as follows:

"Fifth. I direct that all estate, transfer inheritance and succession taxes, State and Federal, including all such taxes on interests of the beneficiaries of the trusts up to the time of distribution by the Court on the audit of the executors' account shall be paid out of the corpus of my residuary estate."

A related question is whether the transfer inheritance tax assessment against the whole of the estate in remainder is due and payable before the termination of the life estates.

John R. Thompson died April 23, 1952. He left no direct heirs. By his will dated February 11, 1948, he bequeathed all his tangible personal property to his cousin, Alice B. Owens, and after directing distribution of four $1,000 legacies, he created four life estates in the remainder of his estate with contingent gifts over to a charity and three named relatives or their issue, two of them also being life tenants. These gifts in remainder are to take effect upon the death of Alice B. Owens, the life tenant whose death will terminate all the life estates.

The inventory filed in this estate shows personal property in the amount of $301,603.18 and real estate in the amount of $9,500, or a gross estate in the sum of $311,103.18. The inheritance tax assessment was made at the rate of 15 percent on the entire estate of

$311,103.18, without reference to the life estates. Alice B. Owens, the executrix and the life tenant who has no interest in the remainder, has appealed from the appraisement on the ground that the life estates should have been appraised separately for present payment of the tax on them and that the payment of the tax on the remainder interests should be postponed until they take effect in possession. An answer was filed by the Commonwealth alleging that by reason of the language of the fifth paragraph of the will, supra, the time of payment of the entire tax was accelerated.

On June 27, 1952, appellant as executrix paid $35,-625 on account of the transfer inheritance tax on this estate, being the tax on $250,000, less the discount.

The pertinent sections of the Inheritance Tax Act are sections 3 of article I and 10 of article II of the Act of June 20, 1919, P. L. 521, as amended, 72 PS §§2304 and 2321. Section 10 of article II (72 PS §2321) reads as follows:

"The register of wills of the county in which letters testamentary or of administration are granted upon the estate of any person dying seized or possessed of property while a resident of the Commonwealth, shall appoint an appraiser, whenever occasion may require, to appraise the value of the property or estate of which such decedent died seized or possessed and hereinbefore subjected to tax. Such appraiser shall make a fair, conscionable appraisement of such estates, and assess and fix the cash value of all annuities and life-estates growing out of said estates, upon which annuities and life-estates the tax imposed by this act shall be immediately payable out of the estate at the rate of such valuation. (Act of 1919, June 20, P. L. 521, art. II, section 10)."

Section 3 of article I (72 PS §2304) reads as follows:

"Where there is a transfer of property by a devise, descent, bequest, gift, or grant, liable to the tax hereinbefore imposed, which devise, descent, bequest, gift, or grant is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life-estates or a period of years, the tax on such estate *shall not be payable,* nor shall interest begin to run thereon, until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years. The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner, but the owner may pay the tax at any time prior to his coming into possession. In such cases the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life-estate or estates for years . . . (Act of 1919, June 20, P. L. 521, art. I, sec. 3; 1939, June 21, P. L. 619, sec. 1; 1943, May 27, P. L. 757, sec. 2)." (Italics supplied).

In DeBorbon's Estate, 211 Pa. 623, 624, the court, in discussing this section in the Act of 1887, said:

"But the words 'shall not be payable' mean only 'shall not be demandable' by the state, as the right of the remaindermen to pay sooner is expressly given in the proviso to the same section. . . ."

The general rule of law governing the assessment and payment of inheritance tax on life estates and remainders is set forth as follows in Heberton Estate, 351 Pa. 564, 568:

"Section 3 of the Act of June 20, 1919, P. L. 521, which is a substantial re-enactment of section 3 of the Act of May 6, 1887, P. L. 79, is clearly intended for the benefit of the remaindermen and gives them the right to elect when they wish to pay the transfer inheritance tax. It is also clear that assessment of the tax shall be on the value of the estate at the time the tax is paid. . . ."

In Constable's Estate, 299 Pa. 509, 514, it is held:

"The act does not require remaindermen to pay the tax on their interest until they come into possession. Hence this amount cannot be charged against them, nor can the estate be made to pay for it."

In Henry's Estate, 18 D. & C. 667, the court surcharged the executor at the instance of the life tenant for depletion of his interest by reason of the payment of the inheritance tax on the remainder interest which, under section 3 of the Act of June 20, 1919, P. L. 521, is not due until the gift in remainder vests in possession. See also Montgomery's Estate, 63 Pa. Superior Ct. 318, 325.

The only exception to the general rule is when a testator directs that the corpus of the estate is to bear the taxes and also directs that they are to be paid immediately. In such instances testator gives the life estate "cum onere" and the life tenant cannot complain that his estate is being lessened: DeBorbon's Estate, supra. In that case the direction was to pay the taxes "on all devises, bequests and legacies contained in this will, as soon after my decease as the same can conveniently be done". The language of the fifth paragraph of the present will is not as broad as the provision in DeBorbon's will. Although it directs that all transfer inheritance taxes shall be paid from the corpus of the residuary estate, it particularly does not specify a time of payment. It is not sufficient to compel a payment of the tax on the whole estate at this time and prevent the exercise of the right to elect under the statute. Nor does it evidence such an intent on the part of testator. Rather, it shows an intention to bring the will within the statute because it specifically includes the payment of the taxes on the life estates and defines the payments as those taxes due "up to the time of distribution by the Court on the audit of the executors' account". If the tax was to be

paid on the whole estate at this time that clause would be meaningless. See Tallman's Estate, 10 D. & C. 89.

The executrix has paid the tax on $250,000 which is apparently in excess of the value of the life estates but this payment does not deprive the life tenants from electing to have the life estates assessed separately and to have payment on the remainders postponed until they take effect in possession.

The appeal from the inheritance tax appraisement and assessment will be sustained.